Lee, J.
It may not be questioned that where a sale of real estate is made in the ordinary mode and in general terms without any stipulation as to the character of the title which the purchaser is to get, he is entitled to demand that a clear title shall be made, and that it shall be assured to him by deed with covenants of general warranty. And this rule holds good equally where the sale is made at public auction as where it is concluded by private negotiation. In either case, however, where the sale is of such a character and under such circumstances as fully and sufficiently to make known to the purchaser the exact nature of the title which he is to expect, he can of course only demand such title as was in contemplation of the parties when the sale was made. As in the case of a sale by an executor, avowedly as such, under the provisions of a will, or by a sheriff or commissioner under the order of a court, and other cases of the like kind. In these the purchaser can only expect to get the special title which the vendor is authorized to con *118 vey warranty. nor is he entitled to demand covenants of general
In the cases before us it is alleged that at the time of the sale of the property in controversy, the appellant p;icl full and complete knowledge of the state of the title, and was aware that the title to a moiety was in the heirs of Yaughn, all of whom with one exception were infants under the age of twenty-one years. ' This however is denied by the appellant who alleges that he purchased in entire ignorance of the state of the title, upon faith of the declaration made by the auctioneer at the time of the sale, that a clear and indisputable title would be made. Nor is there any sufficient proof to establish this knowledge at the time of the sale. But it is proven very distinctly, and indeed may fairly be considered as admitted by the appellant, that after the sale but before any steps were taken to consummate the contract, he was informed of the true situation of the property, and learned that the title to one undivided moiety was in the children of Yaughn as his heirs or devisees, and could only be obtained by a resort to proceedings in chancery.
Now if at this point, the appellant had refused to proceed further with the contract because the title which he was to receive was not such as he had contracted for, he might have been well justified in doing so, and the court of chancery would in vain have been appealed to to compel him to specific performance. But he did not adopt this course. On the contrary immediately after the sale and before a single step had been taken to complete the purchase, being informed by the auctioneer in whom the title was vested, and how and where the title to the moiety of Yaughn’s heirs was to be obtained, he expressed no dissatisfaction, but with this knowledge of the state of the title, plainly manifested his intention to go on with his pur *119 chase, content to take a conveyance from Mason for his moiety, and to look to the court of chancery for the title to that of Vaughn's heirs.
It is in vain to say that - the agreement between Vaughn and Mason of the 14th of September 1846 was not produced till some months afterwards, and that therefore the appellant did not have full knowledge of all the facts when he decided upon his course. Even where a fraud has been practiced it is not necessary that the party should be aware of all the circumstances of the transaction ; it is enough that he should know what he is about to do will confirm the transaction if it were otherwise liable to be impeached. Murray v. Palmer, 2 Sch. & Lef. 474, 486. But there was nothing in that agreement to deter the appellant from proceeding to complete his purchase if otherwise disposed to do so. Its effect would rather have been to confirm him in his purpose. He was told, he says, that a good title would be made to the moiety of Vaughn’s heirs, but that it would be necessary to obtain it by resort to the court of chancery. This was deemed satisfactory, and he determined to proceed with his purchase. What was to be the basis of the decree was a matter of very little consequence if the title passed by it. But although the original agreement was not shown him, he was informed of the existence of such a paper and of its provisions. He says in his cross bill that he requested to see the agreement and the will of Vaughn, but that neither was shown him, and that he would at once have rescinded the agreement if he could have foreseen the difficulties and delay to which he was to be subjected. He did not however rescind it, but concluded to proceed with it. . In his answer to the amended bill, he says, this was when the auctioneer called on him to comply with the terms of sale, and that some time thereafter he was put into possession. So that if this agreement *120 could have had any influence in determining his course, was aPP™ed of its existence before he had taken a single step towards completing his purchase.
Thnsj as it seems to me, the appellant with sufficient knowledge of all material facts, did elect to complete ^ his purchase and take the title of Vaughn’s heirs; and decision of these causes must depend on the solu^011 ^lese questions: first, is the title of Vaughn’s heirs good, and can it be fully and effectually transferred to and vested in the appellant under the proceedings that have been had ? second, is the appellant still entitled to insist as the condition of his performing the contract, that this title shall be assured to him with covenants of general warranty ?
It is no where alleged that there is any defect in the title itself as claimed and held by Vaughn’s heirs, no better or other title whatever is alleged to be outstanding in a third person, nor is it pretended that there has been any forfeiture under the revenue laws, or any lien or incumbrance of any kind whatever resting upon it. Their title, then, is good; but it is insisted on behalf of the appellant that this title cannot be transferred to him under the proceedings which have been had. It is argued that the court of chancery cannot convert the real estate of infants by a sale save only under the provisions of the statute authorizing a sale of infants’ lands in certain cases at the suit of the guardian, or that providing for such sale in certain cases of partition, and that the proceedings in this case are under neither of those statutes and conform to none of their provisions. This argument, however, omits a most material element in the case. It ignores completely the contract of the 14th of September 1846, or denies to it any effect as a proper basis for the action of the court. It is contended that it confers a mere power upon Mason to make a sale which could not be exercised after the death of Vaughn, *121 and that the case is not helped by the concurrence of the executrix of Vaughn because by the will she is expressly prohibited from selling any lands or Whether Mason could or could not, by his own act, make a sale of the property after the death of Vaughn that would be binding upon the heirs of the latter is, in the view I take of the case, not material to be decided, although it may be argued with some plausibility that the effect of the agreement was for the purposes of a sale according to its terms, to revive the right of survivorship, and thus enable the survivor to sell and convey the property, being liable of course to account for a moiety of the proceeds to the estate of the deceased joint tenant. Nor do I deem it material to enquire how far the executrix of Vaughn could act under the agreement with the provision in the will prohibiting her from selling lands, though it may be observed that the agreement expressly provided for its being carried out after the death of either party, the contingency of which is recited as a principal inducement to entering into it, and provides that the executors of the parties shall carry out the same as fully as they could themselves if in life; and this agreement was entered into more than a year after the date of Vaughn’s will, which appears to have been made in 1844, some time before Mason and Vaughn had acquired the property, their deed from Hodges and wife being dated on the 27th of April 1846. For if Mason could not by his own act, consummate a sale after the death of Vaughn that would be effectual to pass the title to the whole property to the purchaser, with or without the concurrence of the executrix of Vaughn, I think it clear that the agreement conferred upon him the right in equity to have a sale of the property according to its terms, and this right could not be taken away by the death of Vaughn, nor could it be impaired by any will that he might have made or might thereafter make. *122 It constituted a material element of the joint tenancy an^ entered into its substance; and the heirs of though not named, were yet bound by it, becauge they took the title that devolved upon them sukje°t to the terms and conditions which it imposed. The regular course of proceeding, it is true, would have been, to file a bill 'against the heirs of Vaughn an<^ as^ ^or a decree for the sale of the property ; this however Mason did not do, but undertook to make the sale by his own authority, and did not seek the aid of a court of chancery either before or after the sale, as the bill which has been filed to affirm the sale is not in his name but in the names of the executrix and heirs of Vaughn. This irregularity however will not necessarily vitiate the proceeding. It has been held by this court that where the guardians of infants had made a sale of their wards’ land upon a bill by them to affirm the sale the case would be a proper one for the consideration of the court under the statute providing a mode by which a guardian might obtain a sale of his wards’ lands, and that if the court should be satisfied the interest of the infants manifestly 'required a sale, and that the one that had been made yras advantageous to them, it might confirm it iosteadmf requiring a new sale to be made under its decree. Garland v. Loving, 1 Rand. 396. The case in judgment, I consider quite as strong as the case just cited, and I think it entirely competent for the court to confirm the sale made by Mason if the circumstances are such as to render it proper. That they are so, I think sufficiently appears. It is shown that the sale was fairly made and that it was to the interest of the infants that the same should be ratified, whilst the widow and the only one of the heirs of Vaughn that had arrived at full age had fully concurred in it.
That the bill filed is in the names of the heirs and not in that of Mason constitutes no serious objection. *123 It can make no difference to the appellant, so he gets the title, whether the suit in which the decree is rendered is prosecuted in the names of the former or that of the latter. Nor was it necessary that it should conform to the statute for the sale of infants’ lands at the suit of their guardian or to that concerning partitions. -The power of the court over the subject did not depend upon either of these statutes, but grew out of the general principles of equity, and is founded upon the agreement between Vaughn and Mason. It was the duty of the court, of course, to see that the names of the infants were used for a proper purpose and to promote a beneficial object, but when satisfied of this, and acting for their benefit, it pronounced its decree, the infants are as much bound by it as if they were of full age, and this even if they had been defendants. That infant plaintiffs are as much bound and as little privileged as one of full age has long been considered the established doctrine in England. Gregory v. Molesworth, 3 Atk. R. 626; Brook v. Hertford, 2 P. Wms. 518; and so laid down as settled law by Judge Carr in Brown v. Armistead, 6 Rand. 594. That the sale was for the benefit of the infants and that it is to their interest that it should be confirmed, is ascertained by the report of the commissioner, and indeed is sufficiently shown by the appellant himself. And I entertain no doubt jjhtyt the decree of the court carrying the same into effect will bind the infants as effectually as they could be in any mode whatever. Whether Mason could have maintained a bill convening the heirs and the purchaser and seeking to confirm the sale is not at all material to enquire. Certainly the appellant by settling with him for his share of the purchase money and accepting a conveyance for his moiety, and consenting to look to the heirs of Vaughn for their title, took away any interest he might otherwise have had to resort to active measures. *124 and exonerated him from the duty of initiating the proceedings. And by the decree as it is, the heirs of Vaughn are as effectually bound as they could have been by any decree that might be rendered in a suit prosecuted by Mason.
Much of what has been said will apply to the claim now set up by the appellant to covenants of general warranty for the interest of Vaughn’s heirs; some further observations on this point may be added.
I have said that a party who purchases real estate in the usual way without any stipulation as to the title is entitled to demand covenants of general warranty. But this right founded on implication may as I have already intimated, be repelled by the circumstances, or it may be waived by the vendee as evinced in his acts and declarations. A vendee may if he please elect to take what the vendor can give though it may not be all he contracted for, and if with full information he chooses to confirm a contract which he had the right to rescind, he will be bound by it, and no new consideration will be necessary to render the confirmation obligatory. Chesterfield v. Janssen, 2 Ves. R. 125, 140; Roche v. O’Brien, 1 Ball & Beat. 330, 355; Cole v. Gibbons, 3 P. Wms. 290; Morse v. Royal, 12 Ves. R. 355. And even in a case of fraud, if instead of repudiating the transaction, the purchaser deal with the property as his own, he will be bound though he after-wards discover a new circumstance of fraud, for that will be considered as only strengthening the evidence of the original fraud, and will not revive the right of repudiation which has been once waived. Campbell v. Fleming, 1 Adolph. & El. 40, 28 Eng. C. L. R. 29.
The question of-waiver of objection to the vendor’s title is, in every case, one of fact: did the purchaser intend to waive, and has he actually waived, the objection ; but the intention may be inferred from his acts, and no direct expression of it is required. Indeed his *125 silence may in some cases be tantamount to the clearest •expression of being content with the title. 2 Sugd. Vend. (6th Am. ed.) 8; Burroughs v. Oakley, 3 Swanst. R. 159. Where a purchaser knows when he makes his ■contract that there is a defect ia the title, and that . .jit- • it will take a considerable time to remove it, or acquires this knowledge after his purchase and acquiesces in the delay, or proceeds with knowledge of the defect, in the execution of the contract, he cannot afterwards complain. Pincke v. Curtcis, 4 Bro. Ch. Cas. 329; per Green, J., Vail v. Nelson, 4 Rand. 478, 481. So, where a purchaser knowing of an objection to a title enters into possession of the estate, he may be considered to have himself executed the purchase, and thus waived his objection. Fludyer v. Cocker, 12 Ves. R. 25; Binks v. Lord Rokeby, 2 Swanst. R. 222. And granting a lease to a person in possession under the vendor, will be held to be a taking possession, for the possession •of the tenant is the possession of the landlord. Stephens v. Guppy, 3 Russ. R. 171, 3 Cond. Eng. Ch. R. 346. Attempting to resell is an important circumstance upon the question of waiver, but it is of itself not conclusive, as the party may have designed merely to ascertain the value without really intending to sell. Knatchbull v. Grueber, 1 Madd. R. 151, 170. So, the preparation of a conveyance is a strong circumstance, as showing that a stage of proceeding had been reached subsequent to the discussion of title, 'and it may be ■supposed, therefore, that all objections had been removed or abandoned. Burroughs v. Oakley, 3 Swanst. R. 159. See, also, Ogilvie v. Foljamhe, 3 Meriv. R. 52; 2 Sugd. Vend. ch. 8, § 1, p. 7, et seq. And if a purchaser take possession under a contract, and afterwards rejects the title, he must relinquish the possession, although he may have expended money in making improvements. Nicloson v. Wordsworth, 2 Swanst. R. 365.
Now, as we have seen, the appellant was informed *126 after the sale but before any step bad been taken to complete the contract, that the title to one moiety in the heirs of Vaughn all of whom except one were infaats, and that their title was to be obtained anc^ transferred to him by a suit in chancery; yet with this knowledge he proceeded to take possession of the property and make such repair and improvements as bis taste or judgment suggested; he settled with Mason for his moiety of the purchase money, and accepted from him a conveyance of his title; and executed a deed of trust upon the property to secure the payment of part of that purchase money; he fully concurred in the proceeding instituted to obtain the title from the heirs and filed an answer to the bill admitting and stating bis readiness and anxiety to- complete the same; and even after he had raised obstacles to the completion of the contract in the way proposed he yet still insisted in his answer to the amended bill that the complainants (the executrix and heirs of Vaughn) should be compelled to make Mm a good title to their moiety, and that he should n.ot be put to the necessity of filing a cross bill for that purpose j and this at a time when, if he did not know it when he filed .his first answer, being in the hands of his counsel he must have known that the heirs of Vaughn could not be compelled to convey with covenants of general warranty, though I apprehend, he must be supposed to have known this when he first elected to go on with his purchase. Me also executed a second deed of trust upon the property to secure the payment ®f borrowed money, and he continued in possession receiving the rents and profits down to the decree,, resisting the suggestion made in the amended bill for the appointment of a receiver. Under these circumstances, I think it quite too late for the appellant to claim to be entitled to covenants of general warranty for the moiety of Vaughn’s heirs either from them or *127 from Mason, and that he must be held by his acts and conduct to have waived the right to insist upon such covenants.
The distinction sought to be made between the waiver of a defect in a title and of covenants in a deed cannot be maintained. In either case it is an alleged defect in the title proposed; and if a party shall be held by his acts and conduct to have waived a defect in the substance of the title, a fortiori he shall be held to have waived covenants for assurance of a title acknowledged to be good or in which no flaw is shown or pretended.
Several other questions were raised and discussed by the counsel to which I will now briefly advert.
It is said to be a grave error in the decree that it contains no provision that a deed shall be made or tendered to the appellant, and a precedent found in the excellent treatise of Mr. Sands (Sands’ Suit in Equity, p. 471, 472), is cited as giving the usual and proper form of such a decree. That this may be a very correct and safe precedent, I am not disposed to question, but so far as I have observed it has not been generally adopted. On the contrary, the more usual practice has been in cases of this kind where a sale is directed to withhold by express provision a conveyance of the title till after the coming in of the report. And the court can as effectually transfer the title by a subsequent order as by a. provision in the decree. At the most, I cannot think it so material as to render necessary the reversal of the decree.
The appointment of the counsel for Vaughn’s heirs as the commissioner to make the sale, and the refusal of the court to associate with him as such one of the counsel of the appellant, is also complained of as error in the decree. It is the constant practice of the courts to name the counsel prosecuting a claim to a decree for the sale of property as the commissioner, and I am *128 ü°f aware that the legality of such an appointment ]las been heretofore questioned. If there be no obiecpersonally, to the counsel so named (and any personai objection in this- case is wholly disclaimed), I cannot see any impropriety in such an appointment especially as the whole matter is under the con£ro¡ COHr£ whose duty it is to see that its corn-missioner has acted with perfect fairness and impartiality, and to correct and, if necessary, punish any deviation from the line of duty. Nor do I see any necessity or particular propriety in associating with him the counsel of the other party. If the former is liable to be biased in favor of bis clients, the latter is not less so in favor of his, and from this diversity of interests divided counsels might ensue not at all favorable to the prompt and harmonious execution of the decree of the court. At any rate it is a matter within the sound discretion of the court and I cannot see or say that that discretion has been unduly exercised.
I can perceive no necessity in this case for a reference to a commissioner to examine and report upon the title. In England it is true, upon a bill for specific performance, either party may have a reference as to title. 1 Sugd. Vend. (ed. 1843) 357. The practice has not generally obtained to this extent with us. Where the title is doubtful and obscure or depending upon matters in pais, as in the case of Beverley v. Lawson's heirs, 3 Munf. 317, a reference may be very proper and necessary. Here the facts were all before the court, and the question was one of law- most appropriate for the court to decide. Jackson v. Ligon, 3 Leigh 161, 180, Judge Carr’s opinion. Even according to the English practice where the title is clear, no reference is necessary. Omerod v. Hardman, 5 Ves. R. 722; Rose v. Calland, Id. 186. And such in my view was the title in question here.
The omission to make the trustees or the cestuis que *129 trust named in the deed to secure Wellington Gloddin and J. L. Apperson, parties, is not an error of which the appellant can complain, if error at all. But I think it was no error, for those parties must be regarded as standing on the footing of pendente lite purchasers, and it was therefore not necessary to notice them in these proceedings. Nor do I think the appellant can be heard here to object to the trustee Taylor» If disqualified to act as trustee, he was rendered so by the act of the appellant. But it is difficult to see how he is disqualified. If he claims to be substituted, as the appellant alleges, to the rights of Mason for the amount he advanced to the appellant to enable him to make the cash payment, he can of course only expect to come in after the debt to Mason is fully satisfied, and thus he would have an interest to make the property sell for as much as possible, so as to create a surplus after satisfying Mason’s debt out of which his supposed claim might be paid, but he can have no interest in so much of the proceeds of the sale as would be required to discharge the debt to Mason for which and for which alone he could make the sale. Thus his interest would be concurrent, rather than conflicting, with that of the appellant. But in addition to this, the appellant made no objection to a sale upon this ground, nor did he ask the court to substitute some other person as trustee in place of Taylor in case the injunction should be dissolved, and it may be not unreasonable to infer that he was content Taylor should continue to act as such. The objection is made for the first time in this ceurt, and comes too late even if it could have availed the party in the court below.
Another objection taken for the first- time in the argument here, is that -the motion to dissolve was premature, or at least that the answer should not have •been read on the hearing because it had not been filed *130 either in court or at the rules. Generally it is true that an answer can only be filed during the session of the court or at the rules, but by our statute, as I think, an exception is made in cases of injunction. The object of giving the judge in vacation power to dissolve an injunction was to prevent delay, and this would be to some extent defeated if a party had to wait until the rule day or a session of the court before he could put in his answer and have the benefit of it on a motion to dissolve. I think the larger power to entertain and decide the motion to dissolve embraces that of receiving the answer and making it a part of the record. If there were any thing in the objection it should properly have been made when the motion to dissolve was heard or at least when the petition to reinstate the injunction was heard and considered by the court.
The last objection I shall notice was that the exceptions to the answer were not set down for argument as the statute requires. There would be some force in this objection if the exceptions could have been made available to the party on argument. I think they could not have been, for I consider the answer as substantially and sufficiently responsive to the bill in all its allegations. That the whole property was sold at the auctioneer’s sale, is not contested, and is I think as sufficiently admitted in the answer as it could be by the most categorical answer in the affirmative : and the whole case proceeds on the assumption that the whole property was sold as an entirety, though the sale was subsequently in effect converted into a sale of moieties by the act of the appellant. The other exceptions are for matters rather lying in inference or proof than in the knowledge of the respondent, or are too technical and hypercritical in their character to require consideration here, in view of the provision of *131 the Code (ch. 181, § 4, p. 680), which declares that a decree shall not be reversed at the instance of a party who has taken depositions for an informality in the proceedings when it appears that there was a full and fair hearing upon the merits and that substantial justice has been done.
Upon the whole I think there was no material error to the prejudice of the appellant in the deeree in the case of Vaughn’s heirs, and none in the order dissolving the injunction or in that refusing to reinstate it, in the case against Mason and Taylor, and am of opinion that the same should be affirmed.
Daniel, Mongure and Samuels, Js. concurred in the opinion of Lee, J.
Allen, P. dissented upon the merits in the first case. He concurred in affirming Goddin v„ Mason.
Decrees affirmed.